**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

|  |  |
|---|---|
| TIM BOYD ) | Civil Action No: 0:24-cv-00291-MGL |
| Plaintiff, ) |  |
| ) |  |
| v. ) | JURY TRIAL DEMANDED |
| ) |  |
| THE MCCLATCHY COMPANY, LLC ) |  |
| d/b/a THE CHARLOTTE OBSERVER. ) |  |
| ) |  |
| Defendant. ) |  |

## COMPLAINT

COMES NOW Plaintiff, Tim Boyd, by and through his undersigned counsel, and files this his Complaint.

## PARTIES

1. Plaintiff, Tim Boyd (hereinafter "Plaintiff"), is a citizen and resident of Rock Hill South Carolina and is the former Varsity Football Coach and physical education teacher for Parkwood High School in Union County, North Carolina.

2. The Charlotte Observer is an American newspaper serving the Charlotte, North Carolina metropolitan area, including York County, South Carolina.

3. Defendant, The McClatchy Company, LLC. (hereinafter "Defendant") is the owner and operator of the Charlotte Observer and is a Delaware limited liability company with its principal place of business in California.

4. This defamation action is brought under the common law of South Carolina.

5. Many of the events giving rise to this action, and the damages suffered by Plaintiff,

1

occurred in South Carolina.

6. The Court has jurisdiction over the claims and causes of action raised in this Complaint pursuant to 28 U.S.C. § 1332.

7. Venue is proper in this judicial district because Defendant has substantial business contacts in this district, and because many of the unlawful acts alleged herein occurred in South Carolina.

## FACTUAL ALLEGATIONS

8. Plaintiff was employed by the Union County Public Schools as a teacher, and head Varsity Football Coach, with Parkwood High School.

9. As the head football coach, Plaintiff implemented his own strategies, culture, training regimens, and disciplinary policies for athletes that disobeyed orders from coaches or teachers. Plaintiff also made decisions on which players would start and play in games.

10. In the Fall of 2022, as a result of certain football players' frustration with Plaintiff's coaching decisions, some of the players parents filed written complaints with Parkwood High School regarding Plaintiff's coaching.

11. These complaints demonstrate that the parents simply disagreed with how Plaintiff coached his team. For example, the first written complaint accused Plaintiff of telling the athletes to be silent during bus rides to games in order to get "locked in, "and that the team had to perform "50 up-downs" because one of the athletes fell asleep during class.

12. Not a single one of the three complaints that Parkwood High School received contained any language regarding or accusing Plaintiff of engaging in sexual conduct with his players or using sexually explicit language while in their presence. Again, these complaints simply voiced parents' disagreement on how Plaintiff coached his team.

13. On September 23, 2022, Parkwood High School assigned Investigator Steve Simpson to investigate the parents' complaints concerning Plaintiff.

14. Fifty-eight individuals were interviewed during the five-day investigation, including Plaintiff, assistant coaches, school personnel, players, and parents.

15. The issues contained in Mr. Simpson's report, dated September 28, 2022, pertinent to this lawsuit are "Issue # 5" and "Issue # 6".

    a. Issue # 5: The preponderance of evidence is that Plaintiff made a comment to a player about "spraying his solution" between the players legs, which was taken by some players as a sexual inuendo concerning semen.

    b. Issue # 6: The preponderance of evidence is that Plaintiff told a player that he liked seeing him in his underwear while the player was changing in the locker room.

16. Plaintiff denied making the alleged comments referenced in paragraph 15 above.

17. The report prepared by Simpson is not the official position of the Union County Public Schools nor does it contain any official conclusion made by the Union County Public Schols regarding Plaintiff. These facts are clear from reading the first page of the Simpson report. The Defendant deliberately ignored these facts when making false statements about the Plaintiff.

18. Months after the Simpson report was prepared, the report was shared with a complaining parent's attorney, Tee Leitner. The Simpson report was sent to Mr. Leitner on January 6, 2023.

19. The report ended up in the hands of countless parents and ultimately reached Charlotte Observer Reporter, Anna Maria Della Costa.

20. On February 9, 2023, The Charlotte Observer published its first article concerning Plaintiff,

3

titled "Union County investigation finds high school football coach sexually harassed his players".

21. The February 9, 2023, article contained the following language, "[p]arents at a Union County high school are demanding answers after a varsity football coach remains employed despite a district investigation corroborating sexual harassment claims against him." As explained above, at no point prior to Parkwood High School's investigation did any parent or player complain of sexual harassment regarding Plaintiff.

22. The February 9, 2023, article also contained a "MORE FINDINGS" header at the end of the article that outlined the accusations against Plaintiff that were the sole reason for the investigation, i.e., disagreements from parents on how Plaintiff coached his team. This language, coupled with the article's focus on the two comments described in paragraph 15 above, furthered a false conclusion to readers that the reason for the investigation was due to accusations of sexual misconduct against Plaintiff. The statements made by Defendant regarding sexual harassment attributable to Plaintiff are false.

23. On February 24, 2023, The Charlotte Observer published their second article concerning Plaintiff, titled "Will Union County schools investigate football coach under Title IX? Experts say it must." The following false statements/publications were included:

    a. "It remains unclear whether Union County Public Schools started a Title IX investigation after finding evidence a football coach harassed his players." The report relied on by Defendant provides no support for the conclusion that Plaintiff sexually harassed his players.

    b. "UCPS conducted an employer relations investigation in September that corroborated some reports from parents and players. It found evidence Boyd 'made

      the statement of a sexual nature,' according to the 10-page report provided to the Observer by a parent whose child is named in it." At no time prior to the investigation had any player or parent filed complaints against Plaintiff accusing him of sexual misconduct. To say that these allegations were corroborated falsely states that the investigation was conducted because of sexual misconduct allegations.

    c. "Experts who spoke to the Observer say Title IX protocols call for an immediate investigation if someone says they have been sexually harassed." Again, the report relied on by Defendant does not provide any language demonstrating that players believe they were sexually harassed by Plaintiff.

24. On April 6, 2023, Superintendent, Andrew G. Houlihan of the Union County Public Schols, wrote a letter to Plaintiff stating in pertinent part, "The allegations made initially by Mr. and Mrs. Greg Enos in September 2022 have been thoroughly investigated. The investigation did not substantiate any allegations of sexual harassment. Further, the investigation did not substantiate any other violations of policy that warrant disciplinary action."

25. Just one day later, on April 7, 2023, Defendant published its third article concerning Plaintiff, titled "Union County coach steps down after high school corroborated some harassment complaints". The title itself is a false publication because, first, the report did not corroborate sexual harassment complaints, and second, Plaintiff did not step down because of these complaints.

26. Plaintiff voluntarily resigned his position with Parkwood High School because he accepted a position with another high school.

5

27. Plaintiff resigned to accept a teaching position and the position of head varsity football coach at a high school in the Chester County School District in South Carolina. Plaintiff was issued a written contract by Chester County; under the terms of the contract, Plaintiff was to receive a $25,000 increase in pay from his salary in Union County.

28. Because of the article published by Defendant on April 7, 2023, the job in Chester County was withdrawn and the contract was never approved by the Chester County School Board.

29. In Defendant's April 7, 2023, publication, it stated multiple times that Plaintiff made inappropriate sexual joke<u>s</u> about "spraying his solution". The Defendant deliberately published statements about multiple sexual jokes despite the fact the Simpson report makes reference to one alleged comment about "spraying his solution." The use of the plural form of joke falsely states that Plaintiff made multiple comments of this nature, which is wholly untrue.

30. In the April 7th article, Defendant references the Simpson report and refers to it as the conclusions of the Union County Public Schools. This is a false statement. Nothing in the Simpson document mentions any decisionmaker of the Union County Public Schols. The first page of the document clearly identifies what it is: "The summary prepared by Investigator Steve Simpson."

31. After the April 7, 2023 article was published, Defendant became aware of the letter from Superintendent Houlihan confirming that the investigation did not substantiate any allegations of sexual harassment.

32. Defendant was aware of the falsity of its April 7, 2023, publication, yet did not retract it.

33. Since April 2023, Plaintiff has lost multiple other varsity football coaching opportunities because of the false statements made by Defendant.

34. The Charlotte Observer's three stories have been published in its print and on-line versions throughout the Charlotte metropolitan area, including York County, South Carolina. The three stories of the Charlotte Observer have been republished to the world at large through Yahoo News.

35. Defendant's conduct was reckless, and wanton and Plaintiff should be awarded punitive damages.

### FOR A FIRST CAUSE OF ACTION
### (Defamation)

36. Plaintiff realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

37. On February 9, 2023, Defendant published their first publication concerning Plaintiff. This publication contained false statements regarding Plaintiff concerning sexual misconduct with his football players.

38. Defendant published its second article on February 24, 2023, confirming its false allegations against Plaintiff that accusations of sexual harassment had been corroborated through an investigate report.

39. Lastly, on April 7, 2023, Defendant published its most damning article, with false statements that Plaintiff had stepped down as the head football coach because he sexually harassed his players. This statement is blatantly false and not supported by a scintilla of fact.

40. These false statements were either knowingly false or in reckless disregard for the truth.

41. When Defendant was made aware that Superintendent Houlihan had issued a letter explicitly stating that accusations against Plaintiff for sexual harassment were unfounded, and in turn, proving that the April 7, 2023, publication was false, Defendant refused to

retract their article.

42. All three of Defendant's unprivileged publications were made to third parties, as these articles were distributed to Defendant's readers, throughout the Charlotte, North Carolina metropolitan area, including York County, South Carolina. The three stories of the Charlotte Observer have been republished to the world at large through Yahoo News.

43. The defamatory words of Defendant have directly and indirectly promulgated to the public at large the false statements that Plaintiff sexually harassed his players and is unfit for his position as head football coach.

44. Such a portrayal of Plaintiff is false, known to be false, made with malicious intent to harm Plaintiff, in reckless disregard of the truth, and are defamatory per se; further, the above constitutes defamation by words and is actionable under the laws of the State of South Carolina.

45. The conduct of Defendant amounts to constitutional malice because it ignored the true nature of the Simpson document, and based on its knowledge of the letter of Superintendent Houlihan, and renders its three articles knowingly false.

46. As a direct and proximate result of Defendant's defamatory articles and statements, Plaintiff's personal and professional reputation has been damaged, Plaintiff's esteem amongst his peers has been damaged, he has suffered physical and emotional distress, mental anguish, humiliation, and he has also suffered loss earnings.

47. Plaintiff is entitled to judgment against Defendant in an amount equal to the sum of his actual damages, including reputational harm, embarrassment, and suffering, and for attorney's fees and costs for bringing this action. Plaintiff is also entitled to pre-judgment interest and to an award of punitive damages to be determined by a jury for the malicious

and intentional conduct of Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, upon the trial of this matter, Plaintiff prays that the Court enter Judgment for him and award the following relief:

A. Actual damages, including lost wages, employment benefits, and future wages and employment benefits lost to him;

B. Compensatory damages for the emotional distress, pain, suffering, stress, and anxiety he has suffered as well as the damage to his reputation, esteem, and loss of good will;

C. Punitive damages;

D. The costs of this action, including reasonable attorney's fees and costs;

E. Pre-judgment and post-judgement interest on all amounts for which pre-judgement and post-judgement interest is legally allowable;

F. All other relief whether legal, equitable or injunctive, as this Court deems just and necessary.

G. Plaintiff demands a jury trial in this action.

Respectfully submitted,

/s/ Jacob J. Modla
Jacob J. Modla
Fed. ID No: 12639
Cromer Babb & Porter, LLC.
1418 Laurel St., Suite A
Columbia, SC, 29211
T: 803-799-9530
E-Mail: jake@cromerbabb.com

January 19, 2024                                        ATTORNEYS FOR PLAINTIFF

9